SARAH J. DUNHAM et al., complainants-appellants,

*v.*

LOUIS CADES et al., defendants-respondents.

[Decided February 2d, 1934.]

On appeal from a decree of the court of chancery advised by Vice-Chancellor Davis, who delivered the following opinion:

"The complainants in the amended bill of complaint are judgment creditors, each having obtained a judgment in the supreme court of New Jersey on July 8th, 1932, against the defendant Louis Cades for the amounts set forth in the amended bill, the total of which judgments and costs is $5,959.78. Walter Everett Jones, who was admitted as a party complainant, obtained a judgment in the supreme court against the defendant Louis Cades and one Hyman Hoffman on August 17th, 1932, for $4,435.41. Each of these judgments was entered by complainants for a deficiency on a bond following the foreclosure and sale of property covered by a mortgage given to secure the bond. All of the bonds upon which the judgments were entered in favor of the respective complainants were dated May 6th, 1919, and were made by defendant Louis Cades and Hyman Hoffman. At the time

of the execution of the bonds and mortgages, the real estate mortgaged was owned by the defendant Louis Cades and one Hyman Hoffman; in 1923 the defendant Louis Cades conveyed all his undivided one-half interest therein to the said Hyman Hoffman, who thereupon became the sole owner thereof.

"On December 16th, 1931, defendant Louis Cades executed to defendant Camden Safe Deposit and Trust Company a trust deed, by which deed he conveyed a large part of his assets, including several parcels of real estate described in the bill of complaint. The bill seeks to set aside this deed of trust, together with the various conveyances made thereunder, as being in fraud of the complainants' rights as creditors.

"The proof discloses that the defendant Louis Cades had dealt in real estate for a number of years, being engaged in that business with one Hyman Hoffman; . that in the course of .their dealings a number of bonds and mortgages had been executed by them to various persons covering the parcels of real estate which they owned. Defendant Cades had parted with title to the premises upon which the complainants held mortgages many years before the foreclosure proceedings.

"The defendant Louis Cades had owned a business property at Nos. 1148-50 Broadway, Camden, New Jersey, where he and his wife had conducted a shoe business for some twenty-five years before Cades retired from business and leased the premises to a tenant. In the fall of 1929 these premises were rented for $700 a month and an attractive offer for the purchase of the property was made through A. J. Rosenfeld, a real estate broker, of $140,000. Mr. Cades wanted to sell, but his wife, the defendant Yetta Cades, was loathe to part with title because of the income which was being received in the way of rentals. Considerable efforts were made to arrive at some understanding and finally an arrangement was made by Mr. Cades to set up a trust for the benefit of his wife from which she was to have an income equal to the rent. The details of the trust agreement were not entirely settled upon but it was understood and agreed what was to be done. The Broadway premises were finally conveyed and $40,000

was paid over to the defendant Yetta Cades and some considerable time afterward the trust deed in question was executed. Mr. Cades consulted with the officers of two or three different trust companies, one, the Broadway Trust Company, actually submitting a form of trust deed or trust agreement. He was deliberate in his negotiations and in making arrangements for this trust agreement, and it was, perhaps, some two years after the sale of the property before he finally entered into the trust agreement in question and carried out its terms.

"The testimony of Mr. Rosenfeld and Dr. Lashman, the latter a nephew of Mrs. Cades, is not disputed, and I cannot disregard the plain facts as they appear with reference to the agreement between Louis Cades and his wife, Yetta Cades, leading up to the execution of the trust agreement and the transfer of the assets to carry out its terms, and I have concluded that it was executed for a fair consideration.

"The complainants have endeavored to show that the transfer of the real estate and other assets set forth in this deed of trust rendered the defendant Louis Cades insolvent under section 2 of the Uniform Fraudulent Conveyance act. *P. L. 1919 p. 500*. This section defines insolvency as follows:

" 'A person is insolvent when the present fair salable value of his assets is less than the amount which will be required to pay his probable liability or his existing debts as they become absolute and matured.'

It is incumbent upon the complainants to establish such insolvency.

"The defendant Louis Cades had a considerable amount of assets in the way of real estate, stocks, cash in bank, and claims over and above the property which was transferred under the terms of the trust agreement. The deed of trust was executed before any of the mortgages, given to secure the bonds on which the complainants' judgments are based, were foreclosed. There was proof offered by the complainants that in addition to their deficiency judgments, Louis Cades was an obligor on bonds which he had executed and secured by mortgages on premises in which he was interested with Hyman Hoffman, to the amount of $99,000; and it is con-

tended that this $99,000, in addition to the $10,000 judgments, represents his existing debts, notwithstanding that the premises covered by the mortgages given to secure these bonds were no longer owned by Cades and had not been foreclosed, and the probable liability of Cades had not been determined. Complainants failed to prove the fair salable value of these premises as of the time of the execution of the deed of trust, but did produce one real estate expert who testified that there was no salable value for these premises at that time, and also an attache of the sheriff's office who testified that premises sold under foreclosure went for a nominal sum only. On the other hand, the defendant produced at least one witness, a real estate expert of good standing, who testified to actual sales of real estate in Camden, and that there was a market for real estate in Camden at that time. The way to determine the probable liability of the defendant Louis Cades, upon these bonds given by him so many years before, would be to prove the fair, salable value of the real estate covered by the mortgages securing these bonds and deduct this value from the total amount of the bonds. Nearly all of these mortgages were in good standing, the interest having been paid promptly, and there was no evidence to show that there would be a probable default of the owners of the properties covered by these mortgages, and it is hard to conceive under the most unfavorable circumstances that they had no salable value. In addition to the assets and real estate referred to in the deed of trust, it was disclosed at the hearing that Louis Cades had considerable other assets; one is a claim against the estate of Aaron Cades, a deceased brother, amounting to $27,000. An effort was made by the complainants to show that this claim was of no value; however, in this effort complainant failed, because the estate consisted of a large amount of real estate and personal property, and there was no competent proofs showing the value of the assets of the estate.

"It is unnecessary to discuss in detail each parcel of real estate and each personal asset of defendant Louis Cades at the time of the execution of the deed of trust in order to determine whether or not he was insolvent at that time. The

complainants failed to make proof of insolvency as required by the statute, for the reason that no adequate testimony was offered as to the value of a large part of the assets of Cades represented in the schedule which he furnished, as well as of the value of the real estate covered by the mortgages securing the bonds upon which there was a contingent liability of Cades.

"Reaching the conclusions that the deed of trust was for a fair consideration and was without any actual intent to defraud creditors, and that the complainants have failed to show by competent proof that the transfers made by Louis Cades to Camden Safe Deposit and Trust Company, trustee, under the trust agreement, rendered him insolvent, will result in the dismissal of the bill."

*Messrs. Waddington & Matthews* and *Messrs. Evans, Ross & Crean,* for the appellants.

*Mr. Louis B. LeDuc,* for the respondents.

PER CURIAM.

The decree appealed from will be affirmed, for the reasons stated in the opinion delivered by Vice-Chancellor Davis, in the court of chancery.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, LLOYD, CASE, BODINE, DONGES, HEHER, KAYS, HETFIELD, DEAR, WELLS, DILL, JJ. 12.

*For reversal*—PARKER, J. 1.